**In re BEN FRANKLIN RETAIL STORE, INC., et. al., Debtor.**

Bankruptcy Nos. 96 B 19482, 96 B 19489, 96 B 19483, 96 B 19494, 96 B 19501, and 96 B 19497.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 12, 1998.

Allan S. Brilliant, Christopher J. Horway, Holleb & Coff, Chicago, IL, for Debtors.

Jay Steinberg, Stephen E. Garcia, Hopkins & Sutter, Chicago, IL, for Unsecured Creditors' Committee.

Michael M. Eidelman, Altheimer & Gray, Chicago, IL, for Official Bondholders' Committee.

Michael Desmond, Office of the U.S. Trustee, Chicago, IL, for United States Trustee.

Miriam R. Stein, James A. Chatz, Kamensky & Rubinstein, Lincolnwood, IL, for Prime Leasing Co.

Lawrence Fisher, Gardner, Carton & Douglas, Chicago, IL, for Trustee/Lawrence Fisher.

Gerald Munitz, Goldberg, Kohn, et al., Chicago, IL, for Jackson Nat'l Life Insurance.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

Gardner, Carton & Douglas ("GCD") has presented an Application for Allowance of Compensation and Reimbursement of Expenses incurred in representing the interim trustee, Lawrence Fisher. The total amounts sought are $202,032.25 in fees and $16,217.29 for expenses. One creditor, Prime Leasing, Inc. ("Prime") objected to that portion of the fees in the amount of $85,544.50, related to a contested trustee election. For the reasons set forth below, this Court will not allow the fees related to the election.

### BACKGROUND

Ben Franklin Retail Stores, Inc. ("Retail") a holding company, and its five operating subsidiaries filed bankruptcy on July 26, 1996.[1] Shortly after their filing the Court ordered that the six cases be jointly administered under Bankr.Rule 1015(b). About eleven months after operating in Chapter 11, the cases were converted to cases under Chapter 7 of the Bankruptcy Code and the United States Trustee appointed an interim trustee for the Retail estate and another interim trustee, Mr. Fisher ("Interim Trustee"), for all of the Subsidiaries' estates. The Interim Trustee retained Gardner, Carton & Douglas as counsel.

At their meeting of creditors, the creditors of the Subsidiaries requested elections and elected Jay Steinberg as permanent trustee.[2] The United States Trustee and the Interim Trustee objected to the joint election, the proxies and the form and the manner of the solicitation.[3] This Court held hearings on the objections over approximately six weeks. Although it sustained some of the objections raised by the Interim Trustee, it concluded that creditors of these estates had expressed their will to have Mr. Steinberg represent their interests and determined that Mr. Steinberg had been properly elected. *See In re Ben Franklin Retail Stores, Inc., et. al.*, 214 B.R. 852 (Bankr.N.D.Ill.1997).

Counsel for the Interim Trustee, Gardner, Carton & Douglas, now seek allowance for the time expended in representing Mr. Fisher in that disputed election. Those fees are separately categorized in their Application under "Trustee Election" and total $85,544.40. Prime objected to these fees contending that they were not reasonably likely to benefit the debtor's estate or "necessary to the administration of the case" and therefore must be disallowed under § 330(a)(4). Prime argues that the Interim Trustee's action in contesting the election "served no beneficial purpose for the debtor's estate or the administration of the case. His efforts to protect his potential fees in these cases caused substantial delay and cost. . . ." Objection at p. 4. Prime contends that it was not the Interim Trustee's role to "contest the clear choice of creditors." Id.

### DISCUSSION

 A professional may be awarded compensation under § 330(a)(1) of the Bank-

---

1. The operating subsidiaries are: Ben Franklin Stores, Inc. ("Stores"), No. 96 B· 19489; Ben Franklin Crafts, Inc. ("Crafts"), No. 96 B 19493; Ben Franklin Transportation, Inc. ("Transportation"), No. 96 B 19494; Ben Franklin Realty II, Inc. ("Realty II"), No. 96 B 19497; Ben Franklin Realty, Inc. ("Realty"), No. 96 B 19501 (collectively, the "Subsidiaries").

2. At a separate meeting of the creditors of Retail an election was also held, without dispute.

3. Before the meeting, the Interim Trustee had been advised that there were sufficient votes to elect a permanent trustee. Bankr.Rule 2003(b)(3) provides that a creditor who has filed a proof of claim is entitled to vote. The Interim Trustee prepared objections to every one of the approximately 600 proofs of claim filed in these cases. At the meeting he filed the objections to all the claims that voted, except the one claim that was voted in his favor.

ruptcy Code only for actual and necessary services. The burden to prove entitlement to compensation under 330(a) is on the professional requesting such fees and expenses. *In the Matter of Kenneth Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir.1994). Necessary services are those that "aid the professional's client in fulfilling its duties under the Code." *In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 485 (Bankr.N.D.Ill.1992). Accordingly, a trustee (or interim trustee) performs necessary services when he carries out the duties set forth in § 704 of the Code. They are:

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

 None of the enumerated duties includes any role for an interim trustee in an election for permanent trustee.[4] A general rule of statutory construction is that "[w]hen the legislature expresses things through a list, the court assumes that what is not listed is excluded." 2A Sutherland Statutory Construction § 47.23, at 216–17 (5th ed.1992). Moreover the Bankruptcy Code contains a rule of construction which provides that the words " 'includes' and 'including' are not limiting." § 102(2). If Congress had intended that the list of trustee duties contained in § 704 be non-exhaustive, it could have simply used the word "includes." It did not do so. Accordingly this Court must conclude that the list of duties in § 704 is exhaustive and a trustee has no duty to object to or dispute an election of a permanent trustee, regardless of any good faith belief that there are grounds for such objection or dispute. *See In the Matter of Cash Currency Exchange, Inc.,* 762 F.2d 542 (7th Cir.1985)(finding that a currency exchange may not be a debtor under § 109(b)(2) by applying the rule of statutory construction *expressio unius est exclusio alterius* and on the basis that the statute did not use the word "include" or "including"). *See also In re Palm Coast, Matanza Shores L.P.,* 101 F.3d 253, 258 (2d Cir.1996)(court determined that a trustee may not hire his own real estate firm as a consultant, because "section 327(d) permits the trustee to serve only as 'attorney or accountant.' It does not authorize the trustee to serve in any other professional capacity.")

██ This construction is not only required by the plain meaning rule of construction, but is also both practical and consistent with other provisions of the Bankruptcy Code dealing with trustee elections. First, authorizing an interim trustee to dispute a creditor election for permanent trustee raises issues

---

**4.** Section 7004(5) authorizes a trustee to object to allowability of proofs of claim. Some of the services included in the "Trustee Election" category include the time spent reviewing and preparing objections to nearly 600 proofs of claim. It is clear to this Court, however, that in this case the objections were not prepared in the general administration of the case but solely for the purpose of eliminating votes in the election. The Court will, therefore, treat that time as related to the election (which is consistent with the way Gardner, Carton & Douglas has categorized it).

concerning the interim trustee's motivations: Is the interim trustee acting in his own self-interest, as has been alleged here, to protect future fees? Or is the interim trustee acting in the best interests of the creditor body, as Gardner, Carton & Douglas contends? Those difficult and contentious issues are avoided by holding that, although an interim trustee may be a party in interest with standing to object to improper solicitations (B.Rule 2006(f)), he or she does so in his or her own interest and not pursuant to a duty to administer the estate.[5]

Next, the Bankruptcy Code and Rules designate the Unites States Trustee as the party responsible for overseeing elections. Section 341 provides that the United States Trustee "shall convene and preside at a meeting of creditors." Section 702(b) authorizes creditors to elect a trustee at the 341 meeting, over which the United States Trustee is presiding.

The Bankruptcy Rules set forth more detailed procedures for conducting trustee elections. Rule 2003(b)(1) reiterates that the United States Trustee presides over the meeting of creditors. Rule 2003(b)(3) requires the United States Trustee to tabulate votes and "[i]n the event of an objection to the amount or allow ability of a claim for the purpose of voting" the United States Trustee is required to tabulate the votes and the votes for each alternative and present them to the court for resolution.

The Bankruptcy Rules thus requires the United States Trustee to present any disputes to the Court for resolution. In this case the United States Trustee properly advised the Court that there was a disputed election. The United States Trustee also objected to the holding of a consolidated election.[6] So even if the Interim Trustee had taken no action at the election beyond objecting to claims and votes, the disputes would

have been brought to the attention of this Court for resolution. This requirement is reinforced by Rule 2003(d), which requires the "presiding officer", the United States Trustee, to inform the court, in writing, if an election dispute exists. And, of course, nothing prohibits a creditor from prosecuting an objection.

## CONCLUSION

A trustee is authorized to perform only those duties enumerated in § 704. Those duties do not include contesting an election for permanent trustee. Rather, that role is reserved to the United States Trustee by the Bankruptcy Code and Rules. Because the Interim Trustee and Gardner, Carton & Douglas were not performing "necessary" services in contesting the election, the services are not compensable under § 330(a)(1). Accordingly, the fees in the amount of $85,544.50 related to the "Trustee Election" are disallowed.

Expenses related to the Trustee Election are also disallowed. It is, however, impossible for this Court to discern the expenses incurred in relation to the Trustee Election. Gardner, Carton & Douglas will therefore be required to submit a revised statement of expenses, omitting any expenses related to the disallowed fees. In addition, this Court does not allow recovery of facsimile charges. All facsimile charges should also be removed from the revised expense disbursement summary. The revised expense summary shall be filed within 14 days.

Gardner, Carton & Douglas also seeks compensation for other services rendered to the Interim Trustee. Prime objects generally to the remaining fees and requests a hearing, but it has not specified any basis for its objection. In its own review, the Court has seen no obvious basis for further disallowance. Prime will be allowed 14 days from

---

**5.** It may at first blush appear unseemly for a trustee to represent his or her own interests, but nothing in the code prohibits a trustee from doing so where there is no conflict with the interests of the estate. After all, § 704 does not impose a duty on trustees to apply for compensation, but it is not unseemly to do so. And a straight-forward recognition of the trustee's interests is preferable to a truly unseemly dispute

about the interim trustee's subjective motives. In any event, the issue of the interim trustee's standing is not before the Court and need not be decided here.

**6.** Section 307 authorizes the United States Trustee to "appear and be heard on any issue in any case or proceeding under this title ... "

the date of this opinion to supplement its objections to the balance of the request for compensation. If such a supplement is filed, Gardner, Carton & Douglas may respond within 21 days thereafter, and Prime may reply within 14 days. If Prime does not file a supplement the balance of the fees in the amount of $116,487.75 and expenses as adjusted in accordance with this Opinion, will be allowed and Gardner, Carton & Douglas may submit an appropriate form of order.