In re John and Ina VICKERS, Debtors.

**Roger W. MOISTER, Jr., as Chapter 7 Trustee for John and Ina Vickers, Plaintiff,**

v.

**John and Ina VICKERS, Defendants.**

**Bankruptcy No. 93–72493.
Adv. No. 94–6331.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 16, 1994.

James C. Cifelli, Atlanta, GA, for debtors.

C. Wilson Dubose, Atlanta, GA, for creditor James F. Henry.

Roger W. Moister, Jr., Trustee, Atlanta, GA.

W. Michael Egan, Jr., Gleaton, Scofield, Egan & Jones, Atlanta, GA, for creditors Reliance Ins. Co. and United Pacific Ins. Co.

## ORDER DENYING TRUSTEE'S MOTION TO DISMISS ADVERSARY PROCEEDING WITH PREJUDICE

JAMES E. MASSEY, Bankruptcy Judge.

The Chapter 7 Trustee moves for an order approving a settlement with the Debtors pursuant to which the Debtors would pay to the estate $24,000 in exchange for a dismissal of this adversary proceeding and a full release of claims of the estate against Classic Electric Company. The Trustee objects to the Debtors' discharge on grounds set forth in Section 727(a)(3), (a)(4) and (a)(5) of the Bankruptcy Code. He seeks no damages and indeed could not do so. Not addressed at all in the Trustee's motion are unasserted claims, perhaps claims for turnover of property of the estate or the recovery of fraudulent transfers.

The ground on which the Trustee proposes the settlement is that "the Estate has collected no funds to date and the attorney for the Trustee has performed substantial services for which he has not been paid and because the Estate has no chance to collect funds from the adversary proceeding, even if successful, since denial of the Debtors' discharge is the sole relief requested." Cast in those terms, the motion is to approve the sale of discharges, a dubious and frightful proposition.

The Trustee served his motion on creditors. Three creditors objected, one of which, Commercial Bank of Gwinnett, has withdrawn its objection. The other creditors objecting to the settlement are Reliance Insurance Company, United Pacific Insurance Company and James F. Henry.

On notice to parties in interest, the court held a hearing on the Trustee's motion on December 14, 1994. At that hearing, the Trustee stated that he had not taken the Debtors' depositions, but had spent 125 hours in connection with the case including some limited investigation of the allegations that he had made in the complaint. He stated that to prove the allegations in the complaint would require the services of an accountant but the estate had no money for an accountant. He stated that he had met with counsel for Commercial Bank of Gwinnett and counsel for James F. Henry and invited them to provide funds for an investigation. The Trustee stated that he heard nothing from those attorneys. Although the Trustee contended that he believed he would have a difficult time proving and might be unable to prove the various factual allegations set forth in the complaint, he conceded that because he had not completed an investigation, he really did not know whether he could prove his allegations or not. The

Trustee provided little information about the extent of his investigation. He has provided no cogent analysis of the basis on which he might win or lose the litigation.

The Trustee's reason for not pursuing the discharge action is that he, in his capacity as counsel for the Trustee, might not be paid for the work he has already performed or would perform in the future. The risks, he says, are too great.

Section 704(6) of the Bankruptcy Code states that a trustee "shall—if advisable, oppose the discharge of the debtor." It may be true that the cost of opposing a discharge may be too great to make opposing a discharge "advisable," particularly where all creditors are given notice of the trustee's dilemma but not a single one shows interest in helping the trustee deal with the problem of costs.

Here, however, the Trustee met with only two creditors which, he says, were dilatory in responding to his suggestion that the estate needed money to hire an accountant. The Trustee did not seek to employ counsel other than himself to pursue claims the estate might have against the Debtors, their children or others. The Trustee did not contact all creditors. He did not tender this lawsuit to creditors.

At the hearing on the Trustee's motion, attorneys for Reliance/United Pacific and Henry expressed an interest in prosecuting the case on behalf of the estate. Presumably, their clients have an interest in examining what claims, if any, the estate may have against the Debtors or third parties. Reliance's attorney indicated a willingness to put up $5,000 if the other two creditors did the same in order to undertake at least some limited investigation. Knowing that there presently exists no funds to pay fees, counsel for Henry indicated a willingness promptly to consider representing the Trustee in this case.

█ Creditors dissatisfied with the Trustee's performance may seek his removal. If the Trustee refuses for whatever reason to prosecute this or any other case on behalf of the estate, creditors may move for an order permitting one or more of them or a committee, should one be formed, to perform the duties of the Trustee. The Trustee and the Debtors may oppose such motions.

The terms of the proposed settlement are suspicious but suspicion must be tempered because the court refused to permit the Debtors or the Trustee to put on evidence concerning factual allegations that the Trustee did not make in the motion. Suspicion stems from the combination of (1) the Trustee's attempt to trade discharges for money he plainly, though perhaps myopically, envisions would flow to him and (2) the Trustee's proposed abandonment of a potentially valuable asset for consideration determined not in reference to the value of the asset but rather in reference to the amount the Trustee thinks his time is worth in opposing discharges that would not be denied.

To get paid, the Trustee proposes to agree on behalf of the estate to give up the estate's claims, if any, against Classic Electric Company, a company allegedly owned by. Mrs. Vickers, as custodian for her minor children. Counsel for Mr. Henry contended that Classic was a company begun after the Vickers' prior company went out of business. The complaint alleges, not on information and belief, but presumably on the personal knowledge of the Trustee based on his investigation, that "[t]he ownership of Classic Electric Company through an alleged custodial arrangement with Ina Vickers is not bonafide and was created to hinder, delay and defraud creditors." In other words, something funny is going on with respect to the demise of the Debtors' former company and the creation of Classic.

What capital investment did the children make in this company? Is Classic using tangible or intangible assets of the prior company? Is it in exactly the same business serving the same customers? What do answers to these and related questions say about the estate's interest in Classic? How hard would it be to answer these questions? Are there factual allegations in the complaint that could be proved so as to deny the Debtors' discharges without the need for in-depth analysis of the Debtors' books and records? Does the need for an in-depth analysis relate to the discharge issues or to the claims issues

or both? Counsel for the Debtors suggested that the section 727 complaint might be untimely. Is it? If so, is the settlement of the section 727 claims merely a thin disguise to get the release for Classic on unasserted or even presently unknown but easily discoverable claims? Is the object to focus on the Trustee's contention that the discharge case is unwinnable on the merits, which, because it is untimely, really poses no threat, so as to avoid putting a spotlight on other claims? Did the Trustee fire off a complaint that he never had any basis for proving and that is totally without merit? Are the Debtors honest but unlucky with straight forward, legal rights to organize a new business so as legally to put its assets beyond the reach of their creditors and the creditors of the old company? The Trustee is too busy trying to get paid to provide answers to these questions.

■ Either the discharges ought to be granted or they ought to be denied. Nothing in the Bankruptcy Code authorizes a trustee to seek funds from a debtor or to release a non-debtor entity as a price for giving up on a discharge complaint. Discharges are not property of the estate and are not for sale. It is against public policy to sell discharges. *In re Moore,* 50 B.R. 661 (Bankr.E.D.Tenn. 1985). The reasons are obvious. Selling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity. A trustee seeking to get paid may coerce an honest debtor into paying something to get rid of a complaint that has no merit. A dishonest debtor may cover up even greater sins than those that gave rise to the complaint in the first place. The conduct described in these hypothetical situations may be criminal bankruptcy fraud. *See* 18 U.S.C. § 152(6); 9 *Collier on Bankruptcy,* ¶ 7041.03 (15th ed. 1988). By contrast, what appears to be happening here is that the Trustee is seeking to settle two different types of claims that may be related by facts but not by the type of relief available to the estate. Public policy forbids him to offer to settle one in order to settle the other.

The rule may well be different if a creditor seeks to dismiss a discharge count in exchange for the settlement of a viable dischargeability count, where the trustee and other creditors are notified and given the opportunity to take up the discharge action but fail to do so. *Russo v. Nicolosi (In re Nicolosi),* 86 B.R. 882 (Bankr.W.D.La.1988) and *In re Margolin,* 135 B.R. 671 (Bankr. D.Colo.1992). That situation is not this case.

If the Trustee wishes to renew his motion and state facts to show that his complaint was improvidently filed because the factual allegations cannot be proved or that proving the factual allegations would require the expenditure of an unreasonable amount of money and creditors, after having ample opportunity to do so, have refused to take up the case on behalf of the estate, the Trustee may, of course, do so. If the court were to find such a motion meritorious, it would dismiss the complaint with prejudice without the payment of any money and without the delivery of any release. If the Trustee wishes to move to settle or abandon claims of the estate against the Vickers or their children for fraudulent transfers or the like, he may do so, whether or not he has filed a complaint to recover damages. What he may not do is link the former motion with the latter.

Based upon the foregoing, it is herewith

ORDERED that the Trustee's motion to dismiss this adversary proceeding with prejudice is DENIED, with prejudice as to any effort by the Trustee to have any money paid to the estate or to release any entity in exchange for a discharge but without prejudice with respect to whether or not the complaint to deny discharge should be dismissed.